**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ARLENE FAYE HATTEN,** | : | |
| | : | **Case No. 2:26-cv-685** |
| **Plaintiff,** | : | |
| | : | **Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Kimberly A. Jolson** |
| **SELENE FINANCE LP, *et al.*,** | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter comes before this Court on *pro se* Plaintiff Arlene Faye Hatten's Emergency *Ex Parte* Motion for a Temporary Restraining Order and Preliminary Injunction. (ECF No. 2). For the following reasons, Plaintiff's Motion is **DENIED**.

## I. BACKGROUND

Plaintiff Hatten is a resident of Morrow County, Ohio. She sues thirteen defendants for their alleged roles in her July 2024 eviction from her home. These Defendants are: Selene Finance LP, a debt collection company; Selene Finance LP's CEO, Josepha Pensabene; Morrow County Court of Common Pleas Judges Robert C. Hickson, Jr. and Tom C. Elkin; Court Clerk Mary Meadows, Sheriff John L. Hinton; Deputy Sheriff Brian Newsome; Officers Crabtree, Atwel, and Plough; property occupant Sheila Daniels; the law firm Saia, Marrocco, and Jensen, which represented Daniels in the eviction proceedings; and John J. Saia, the managing partner of Saia, Marrocco, and Jensen. (Compl., ECF No. 1 ¶¶ 6–18).

Plaintiff initiated her suit on June 5, 2026, challenging her eviction as unlawful. She argues that Selene Finance LP violated the law by foreclosing on her property even though Plaintiff never entered into an agreement with that company. Because of this lack of privity, Plaintiff asserts that

her underlying eviction proceeding in the Morrow County Court of Common Pleas was void and obtained by fraud upon the court. Thus, she challenges her actual eviction by law enforcement as improper. She claims that she was forcibly removed from her home under threat of arrest, her property discarded without her consent, and her minor grandchildren traumatized by witnessing the eviction. Plaintiff also argues that Defendant Daniels' current possession of the property is improper. She alleges that she and her minor grandchildren "have suffered continuous harm since July 24, 2024, including loss of housing, loss of personal property, and severe emotional distress." (*Id.* ¶¶ 19–34).

The same day she filed her suit, Plaintiff filed the instant motion, seeking an *ex parte* temporary restraining order and preliminary injunction and arguing that emergency relief is proper and necessary in her case. (ECF No. 2). Although her motion is short, Plaintiff does address the four factors courts consider in evaluating emergency injunctive relief. First, she asserts that she is likely to succeed on the merits because her underlying eviction was based on fraud and thus "is void ab initio." (*Id.* at 2). Second, she claims that she and her minor grandchildren "will suffer irreparable harm every hour [judicial] intervention is delayed" because they are living in "inadequate temporary housing." (*Id.* at 3). She also asserts that her grandchildren suffer particularly severe harm because they "were forced to witness a terrifying home invasion by armed deputies and have suffered profound emotional trauma, anxiety, and a loss of security"; she claims that their trauma "is ongoing and cannot be adequately compensated by money" because it is a form of child endangerment. (*Id.*). Finally, Plaintiff claims that both the balance of equities and the public interest favor her, because they favor stopping void court orders and protecting children from harm. (*Id.*). In a sworn affidavit, Plaintiff attests to the facts of her eviction, explaining she

believes that she and her grandchildren will suffer continued and irreparable harm as long as they are precluded from the home.

On July 1, 2026, this case was assigned to the undersigned as a related case. On July 17, 2026, Plaintiff emailed a document titled "Demand for Immediate Ruling on Pending Emergency Motion" to the Court's chambers email address, representing that she had been unable to file it electronically on the docket. In that document, Plaintiff argues that the Court has delayed ruling on her emergency motion in violation of the local rules of this Court, the Canon of Judicial Ethics, and the Due Process Clause of the Fourteenth Amendment. She urges the Court take up her emergency motion because it concerns the welfare of her grandchildren. A copy of Plaintiff's *ex parte* correspondence with the Court's chambers is attached to this Opinion and Order.

## II. STANDARD OF REVIEW

Preliminary injunctions and temporary restraining orders are both extraordinary and emergency forms of relief. Both are governed by Rule 65 of the Federal Rules of Civil Procedure.

### A. Preliminary Injunction

Courts may issue preliminary injunctive relief upon notice to the adverse party when the moving party believes it will suffer immediate and irreparable harm. *Doe v. Edlow*, --- F. Supp. 3d ----, 2026 WL 1945085, at *19 (S.D. Ohio July 6, 2026) (Marbley, J.); Fed. R. Civ. P. 65(a). A preliminary injunction is an "extraordinary remedy," intended to preserve the status quo until trial. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). It "should 'only be awarded upon a clear showing that the [movant] is entitled to such relief.'" *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (quoting *Winter*, 555 U.S. at 22). Given their emergency, nature, preliminary injunctions are "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.

A party is thus not required to prove his case in full at a preliminary-injunction hearing." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Moreover, the "movant does not need to establish a quantum of proof, whether a preponderance or clear and convincing evidence, with respect to each factor to be eligible for preliminary relief." *PCC Airfoils, LLC v. Daugherty*, 176 F.4th 509, 513 (6th Cir. 2026).

Courts consider four factors "to be balanced" in evaluating whether to issue a preliminary injunction: (1) "whether the movant has a strong likelihood of success on the merits"; (2) whether the movant would suffer irreparable injury absent the injunction"; (3) whether the injunction would cause substantial harm to others"; and (4) whether the public interest would be served by the issuance of an injunction." *S. Glazer's Distribs.*, 860 F.3d at 849 (citation and internal quotation marks omitted).

**B. Temporary Restraining Order**

Like preliminary injunctions, temporary restraining orders are extraordinary emergency measures. They are meant "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *NetChoice, LLC v. Yost*, 711 F. Supp. 3d 844, 852 (S.D. Ohio 2024) (Marbley, J.) (citations and internal quotation marks omitted). Courts consider the same four preliminary injunction factors in assessing whether to issue a temporary restraining order. *See City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam). Of those four factors, immediacy and irreparability of harm are central. *NetChoice, LLC*, 711 F. Supp. 3d at 852; *see Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996) ("In issuing a TRO, a district court is to review factors such as the party's likelihood of success on the merits and the threat of irreparable injury."). "The burden of proving that the circumstances clearly demand such an extraordinary remedy is a heavy

one since the party seeking the injunction must establish its case by clear and convincing evidence." *NetChoice, LLC*, 711 F. Supp. 3d at 852 (citations and internal quotation marks omitted).

A court may issue a temporary restraining order "without written or oral notice to the adverse party or its attorney only if" the movant seeking the temporary restraining order provides "specific facts in an affidavit or a verified complaint" that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and . . . the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

## III. LAW & ANALYSIS

Plaintiff has not shown that the extraordinary emergency relief of either a preliminary injunction or temporary restraining order would be appropriate in her case. Her Emergency *Ex Parte* Motion fails for several reasons.

### A. Plaintiff's Noncompliance with Local Rules

As a threshold matter, Plaintiff has failed to comply with the Local Rules of this Court in seeking this emergency relief. Local Rule 65.1 provides that "the Court will not hear or rule on any motion for a temporary restraining order or a preliminary injunction until after the Court holds an informal preliminary conference with all parties to determine what additional proceedings are necessary." S.D. Ohio Civ. R. 65.1(a). As the movant, it was Plaintiff's responsibility to seek and "obtain, from the office of the Judge to whom the action is assigned, a date and time for the informal conference," just as it would then become her responsibility to "immediately notify counsel for the adverse party, if known, or if not known, the adverse party, that the application has been filed or is to be filed and the date, time, and location of the conference." *Id.* Plaintiff has

failed to take these steps, and her *pro se* status does not excuse her from observing the rules and procedures of the Court. *See King v. Warden, Warren Corr. Inst.*, 2026 WL 2035804, at *5 (S.D. Ohio July 15, 2026) (Marbley, J.) (while the filings of *pro se* litigants are construed liberally, courts cannot serve as advocates for *pro se* litigants or overlook compliance with the applicable rules of procedure).

Additionally, Plaintiff's *ex parte* communication via a demand letter emailed to chambers lacks a legal basis. Although her letter suggested that the Court had improperly delayed ruling on her emergency motion in violation of Local Rule 7.1(b) because the Court took more than a week to issue its decision, Plaintiff cites no authority for her conclusory assertion that "[a] delay of over one week on an emergency motion involving the welfare of children is, by any definition, unreasonable." Moreover, Local Rule 7.1(b) does not stand for the proposition which Plaintiff cites. Plaintiff argues that under Local Rule 7.1(b), the Court must "rule on motions within a reasonable time." That text is not found in the Court's Local Rule 7.1(b), which instead provides procedures and *obligations on a movant* who submits a motion requiring an evidentiary hearing. *See* S.D. Ohio Civ. R. 7.1(b).

Last, Plaintiff's letter to chambers is an impermissible form of *ex parte* communication. It violates Local Rule 7.2(c), which prohibits letters to the Court unless such letters are "requested by the Court in a specific matter," or are "advising the Court of the settlement of a pending matter." S.D. Ohio Civ. R. 7.2(c).

**B. Plaintiff's Failure to Show Notice**

Moreover, Plaintiff has not shown that notice was provided to the opposing parties in this case. When a party seeks relief under Rule 65, the notice they provide to the opposing party—or the lack of such notice—is critical in evaluating whether emergency relief is proper. *See Rudolph*

*v. Harrison Metro. Housing Auth.*, 2025 WL 2822766, at *2–3 (S.D. Ohio Oct. 3, 2025) (Marbley, J.).

Plaintiff's request for a preliminary injunction must fail because she has not shown that the opposing parties have notice of her request. The Court "may issue a preliminary injunction *only on notice* to the adverse party." Fed. R. Civ. P. 65(a)(1) (emphasis added). The docket in this matter reflects that summonses were issued against the Defendants, (*see* ECF No. 7), but there is no indication whether Defendants were actually served. *See* Fed. R. Civ. P. 4(m) ("The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service."). Absent Plaintiff showing that she has given notice of her request for a preliminary injunction, the Court is "without authority" to grant such relief. *Rudolph*, 2025 WL 2822766, at *3 (collecting cases).

Plaintiff's request for a temporary restraining order fares no better. She has failed to show that she would suffer irreparable harm before the non-movants could be heard, just as she has not certified in writing that she made efforts to give notice or explained why notice should not be required. Fed. R. Civ. P. 65(b)(1). Even though Rule 65(b)(1) only explicitly addresses the certification of attorneys, "courts have interpreted this requirement as applying to a *pro se* litigant as well." *Taylor-Bey v. Deangelo*, 2024 WL 482236, at *3 (E.D. Mich. Jan. 12, 2024). These restrictions on the issuance of *ex parte* restraining orders reflect that our Anglo-American legal system "runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted to both sides of a dispute." *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 429 (1974)).

In sum, no litigant can obtain an *ex parte* preliminary injunction in any matter, so Plaintiff cannot obtain such relief in this case. And Plaintiff has not shown that she has taken the required steps for the Court to consider whether it should grant her an *ex parte* temporary restraining order.

**C. Plaintiff's Conclusory Arguments Fail on the Merits**

Even if Plaintiff had complied with the Court's rules and shown that Defendants had notice—or certified why notice should not be required for a temporary restraining order—her request would fail on the merits.

As a threshold matter, Plaintiff does not explain why or how the purported harms suffered by her minor grandchildren are relevant to *her* lawsuit, (*see* ECF No. 1 ¶¶ 32–35, 38, 81), where she is the only plaintiff in the action. It is unclear whether she would have standing to assert her grandchildren's injuries, or how they otherwise relate to *her* case. *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (explaining that a plaintiff must maintain a "personal interest" in a dispute "for each claim that they press and for each form of relief that that they seek" at every stage of the case); *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381–82 (2024) ("[T]o sue in federal court, a plaintiff must show that he or she has suffered or likely will suffer an injury in fact."). The Court will not consider allegations about injuries to Plaintiff's grandchildren, who are not parties to this case, in evaluating *Plaintiff's* request for emergency relief.

Moreover, the Complaint appears incomplete. Plaintiff appears to have failed to include evidence in her exhibits. It is unclear what Plaintiff expects the Court to do with exhibits that are merely placeholders for her to "Attach the notarized affidavit," "Attach a copy of the eviction order," "Attach a copy of [her] letter to Selene Finance," "Attach [a] list of belongings," or "Attach [her] photos." (ECF No. 1-1). Again, while Plaintiff does not need to *prove* her case at this preliminary stage, she must carry the burden of showing that emergency relief should issue.

Turning to the merits of her Emergency *Ex Parte* Motion, Plaintiff's arguments on the four preliminary injunction factors are so underdeveloped and conclusory that they cannot surmount the high threshold to obtaining emergency relief. Although the four preliminary injunction factors "are not prerequisites, if there is no chance of success on the merits, an injunction cannot issue." *Doe*, 2026 WL 1945085, at *19 (citing *S. Glazer's Distribs.*, 860 F.3d at 849). Plaintiff has failed to show any chance of success on the merits. She simply concludes that she will succeed "because the eviction order is void ab initio," arguing that the underlying state court judgment resulted from fraud because Defendant Selene Finance LP had failed to show a legal interest in the property. (ECF No. 2 at 2). But Plaintiff did not provide any evidence in support of her arguments, just as she does not explain how the state court was defrauded. Plaintiff does not even provide the state court judgment, let alone detail the alleged fraud or clarify why she seeks to remedy a state court decision through the federal court system.

This same conclusory logic infects Plaintiff's analysis of the balance of equities and the public interest, too. She presumes, without showing, that she was evicted through a void order and the new possessor of the property is a trespasser. Beginning from the assumption that she was wronged, Plaintiff concludes that these factors necessarily must favor her. But Plaintiff has failed to show anything to suggest that she was actually wronged. Her "motion is devoid of legal argument, factual allegations, and evidence." *Brightbey v. Wayne Cnty. Treasurer*, 2023 WL 2563987, at *2 (Mar. 17, 2023). Her affidavit provides minimal factual detail regarding the alleged events. For example, she attests—without detail—that she "was not given a meaningful hearing on the merits of the foreclosure," and claims she did not receive a jury trial. (*See* ECF No. 2). But she does not explain what happened in her case to show why she should have been entitled to a jury trial, nor does she explain what is meant by "meaningful hearing."

Finally, Plaintiff's irreparable harm argument is undercut by her substantial delay in bringing this suit. Plaintiff argues that she "will suffer irreparable harm every hour this Court's intervention is delayed," because she and her grandchildren have been "displaced from their home since July 24, 2024." (*Id.* at 3). If true, she offers no explanation for why she waited nearly two years before bringing this suit. A delay in seeking emergency relief may be so substantial as to constitute an "unreasonable delay," which will then "weigh against a finding of irreparable harm" and justify denying emergency relief. *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x 398, 405 (6th Cir. 2013). Plaintiff's nearly two-year delay in seeking relief here seriously undermines her irreparable harm argument, and thus her requested relief. *E.g.*, *Manlove v. Volkswagen Aktiengesellschaft*, 2019 WL 2291894, at *15 (E.D. Tenn. May 17, 2019) (17-month delay in bringing suit weighed against irreparable harm); *Kenyatta v. Combs*, 2025 WL 2636610, at *10 (S.D.N.Y. Sept. 12, 2025) (8-month delay from filing action and 3-month delay from amending complaint weighed against irreparable harm).

Plaintiff's Emergency *Ex Parte* Motion is bare-bones. Her arguments are devoid of developed reasoning and simply restate her position that she was wronged without showing how she was wronged. In sum, she has failed to show that the "extraordinary" emergency relief requested is "clearly" warranted. *Farm Credit Mid-Am., ACA v. Varner*, 2021 WL 9979768, at *1 (W.D. Ky. Dec. 21, 2021). Absent any evidence documenting her situation, the Court "cannot conclude that danger is so immediate to necessitate" the emergency relief requested "without an opportunity for Defendants to be heard." *Jackson v. U.S. Bank Loan Servicing*, 2009 WL 2447485, at *3 (E.D. Mich. Aug. 6, 2009).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Emergency *Ex Parte* Motion (ECF No. 2) is **DENIED WITH PREJUDICE**.

Plaintiff is **CAUTIONED** that she must file future documents with the Clerk of Court unless specifically permitted to do otherwise under Local Rule 7.2(c). The Court will not consider further submissions to chambers in violation of the Local Rules.

Plaintiff is expected to familiarize herself with and follow the Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Southern District of Ohio. The Local Rules of the Court are available on the Court's website.[1] The Court also maintains a *Pro Se* Handbook for litigants who are without counsel, and Plaintiff is encouraged to review it.[2]

Finally, the Court *sua sponte* raises the issue of the use of artificial intelligence in Court filings. For all future filings, parties who use generative artificial intelligence ("Generative AI") to help generate the content of any portion of a pleading, motion, brief, or other document are **ORDERED** to submit a declaration captioned "Disclosure of the Use of Generative AI" disclosing the use of Generative AI. The declaration must identify the content (by page, section, or paragraph number) which was prepared with the assistance of generative AI and state the platform used (*e.g.*, OpenAI's ChatGPT, Google Gemini, etc.). In the declaration, the attorney or *pro se* litigant must certify that they have reviewed the relevant source material and have verified that all submissions to the Court are accurate, and that they have complied with their obligations under the Federal Rules of Civil Procedure, including under Rule 11(b). Rule 11(b) provides that by submitting a pleading, motion, brief, or other paper to the Court, an attorney or *pro se* litigant certifies that their

[1] https://www.ohsd.uscourts.gov/local-rules
[2] The *Pro Se* Handbook can also be accessed on the Court's website at the following address: https://www.ohsd.uscourts.gov/pro-se-handbook

claims, defenses, and other legal contentions are warranted by existing law and that their factual contentions have evidentiary support. Fed. R. Civ. P. 11(b).

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: August 11, 2026**